**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10   JOEL GUTIERREZ, et. al.,                CASE NO. 5:11-cv-03111 EJD

11                                           **ORDER GRANTING DEFENDANT'S**
                    Plaintiff(s),            **MOTION TO DISMISS**
12        v.

13   STATE FARM MUTUAL INSURANCE
     COMPANY, et. al.,                       [Docket Item No. 17]
14

15                  Defendant(s).
                    _____/
16        Presently before the court is Defendant Ally Financial Company's ("Ally") Motion to

17   Dismiss the Complaint filed by Plaintiffs Joel Gutierrez and Veronica Gutierrez (collectively,

18   "Plaintiffs").[1]  See Docket Item No. 17.  Plaintiffs filed written opposition to the motion.  The court

19   found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and

20   previously vacated the hearing date.  Jurisdiction in this court arises pursuant to 28 U.S.C. § 1331.

21   Having fully reviewed the moving, opposing and reply papers filed the parties, the court has

22   determined Ally's motion should be granted for the reasons described below.

23                 **I.    FACTUAL AND PROCEDURAL BACKGROUND**

24        The allegations contained in this section are taken largely from the Complaint.  Plaintiffs are

25   husband and wife.  See Compl., Docket Item No. 1, Ex. A, at ¶ 2.  At some point prior to July, 31,

26

27   _____

28        [1] Because Plaintiffs share a common surname, the court will refer to them by their first
     names when referencing them separately solely for the purposes of clarity.  The court means no
     disrespect.

                                              1
     Case No. 5:11-cv-03111 EJD
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**United States District Court**

For the Northern District of California

1  2010, Plaintiffs purchased a limited edition 2007 Pontiac Solstice (the "vehicle"), for which Ally

2  was a lienholder.  See id.  As to the vehicle, Plaintiffs contracted with Defendant State Farm

3  Insurance Company ("State Farm") for a first-party automobile insurance policy, and also purchased

4  a Guaranteed Auto Protection policy (the "GAP contract") from Ally.  See id.  According to

5  Plaintiffs, the GAP contract would protect Plaintiffs from any deficiencies or inadequacies in the

6  State Farm coverage.

7        The vehicle was stolen at some point between July 31, 2010, and August 5, 2010.  See id., at

8  ¶ 3.  At that time, the fair market value of the vehicle was approximately $30,000.00, and Plaintiffs

9  owed a balance of approximately $18,000.00 to Ally on the original Retail Installment Sales

10 Contract (the "RISC").  See id.  Plaintiffs immediately reported the theft to State Farm, but State

11 Farm refused to pay on the theft claim.  See id.  Plaintiffs also reported the theft to the police and to

12 Ally.  See id., at ¶ 5.  Plaintiffs allege that two female representatives from Ally informed them they

13 should cease making monthly payments on the RISC because Ally would be paid in full from State

14 Farm or through the GAP contract coverage.  See id.  Plaintiffs relied on these representations and

15 stopped paying.  See id.

16        The vehicle was recovered in or about November, 2010.  See id., at ¶¶ 3, 5.  Although it had

17 been destroyed, State Farm refused to pay for damages to the vehicle despite the prompt filing of a

18 notarized claim by Plaintiffs and also refused to advise Ally that it should seek payment from State

19 Farm.  See id., at ¶¶ 3, 5, 6.  Instead, State Farm commenced a fraud investigation.  See id., at ¶ 3.

20 The vehicle was ultimately repossessed.  See id., at ¶ 8.

21        Plaintiffs commenced the instant action in Santa Clara Superior Court on May 2, 2011, for

22 (1) breach of contract against State Farm and Ally, (2) violation of the Fair Debt Collection Practices

23 Act ("FDCPA"), 15 U.S.C. § 1692 et. seq., against Ally, (3) violation of the Rosenthal Fair Debt

24 Collection Practices Act ("RFDCPA"), California Civil Code § 1788 et. seq., against Ally, (4)

25 insurance bad faith against State Farm and Ally, and (5) conversion against Ally.[2]  State Farm

26 removed the action to this court on June 23, 2011.  This motion followed.

27

28        [2] A third defendant, Dunns Tow, was dismissed on July 13, 2011.  See Docket Item No. 11.

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1

## II.   LEGAL STANDARD

2        Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

3  specificity to "give the defendant fair notice of what the. . . claim is and the grounds upon which it

4  rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

5  complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a

6  claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

7  appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

8  cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

9  2008).

10       When deciding whether to grant a motion to dismiss, the court must accept as true all

11  "well-pleaded factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).

12  The court must also construe the alleged facts in the light most favorable to the plaintiff.  Love v.

13  United States, 915 F.2d 1242, 1245 (9th Cir. 1988).  However, "courts are not bound to accept as

14  true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.  Moreover,

15  anything beyond the pleadings generally may not generally be examined.  Hal Roach Studios, Inc. v.

16  Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  But "material which is properly

17  submitted as part of the complaint may be considered."  Twombly, 550 U.S. at 555.[3]

18

## III.   DISCUSSION

19

### A.   Veronica's Standing

20       Ally first argues that Veronica lacks standing as to all claims against Ally because she was

21  not a party to either the RISC or the GAP contracts.  In response, Plaintiffs argue Veronica's

22  standing stems from her community interest in marital property and debts.  Both parties are correct

23

---

24       [3] Ally has requested the court take judicial notice of the RISC and GAP contract for this
motion, to which Plaintiff objects.  The court denies Ally's request with regard to the RISC since
25  this motion is resolved without a need to consider that document.  It is also denied as to the GAP
contract, but the court nonetheless has considered it for this motion.  Judicial notice is not required.
26  United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003) ("Even if a document is not attached
to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively
27  to the document or the document forms the basis of the plaintiff's claim.  The defendant may offer
such a document, and the district court may treat such a document as part of the complaint, and thus
28  may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."
(internal citations omitted)).

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

and incorrect in certain aspects. The court agrees with Ally that Veronica lacks standing as to the contract-based claims, but also agrees with Plaintiffs that Veronica's status as Joel's spouse is sufficient for standing as to the other claims.

The court begins with general standing principles. The modern standing doctrine contains three basic constitutional elements along with a corollary "prudential" limitation. The constitutional elements require: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a casual connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The prudential limitation "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen, 468 U.S. at 751).

Next, short reference must be made to this state's community property law. In California, all property acquired by either spouse during a valid marriage is presumptively community property. Cal. Fam. Code § 760. In addition, "the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910(a).

These statutory presumptions are the general starting point for the division of marital property and obligations. See Marriage of Benson, 36 Cal. 4th 1096, 1103 (2005). They do not, however, confer standing on a non-contracting spouse. See Austero v. Nat'l Cas. Co., 62 Cal. App. 3d 511 (1976); see also Hatchwell v. Blue Shield, 198 Cal. App. 3d 1027 (1988). In rejecting an argument similar to that posed by Plaintiffs here, the Austero court stated: "Whatever [Wife's] property rights with respect to the policies and their proceeds may be, the fact remains that she is not a party to the contracts." Austero, 62 Cal. App. 3d at 517. Building upon that concept, the Hatchwell court found "inappropriate" the enforcement of contract rights based solely on an indirect

4

United States District Court
For the Northern District of California

1    interest in community property since "the community interest would seem sufficiently protected by

2    the rights of the covered spouse." Hatchwell, 198 Cal. App. 3d at 1036.

3         Here, Plaintiffs potentially seek to enforce two contracts against Ally, and it is undisputed

4    that neither were signed by Veronica. Pursuant Austero and Hatchwell, Veronica cannot, as a matter

5    of law rely, on either her community interest in the object of the contracts - in this case the vehicle -

6    or the community nature of the debt associated with that asset in order to enforce these contracts

7    against Ally. See id. at 1033 ("Someone who is not a party to the contract has no standing to

8    enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the

9    contracting party."). It therefore follows that, under a constitutional standing analysis, Veronica has

10   not experienced an "injury in fact" as to the RISC or GAP contracts. Moreover, her inclusion in the

11   contract-based claims against Ally violates the prudential limitation on standing since she is raising

12   the rights of another, namely her husband Joel.

13        Since Veronica cannot maintain the claims for breach of contract, breach of the implied

14   covenant of good faith and fair dealing, or bad faith against *Ally*, she is dismissed with prejudice

15   from those claims to the extent they are so asserted.

16        However, the same analysis does not apply to the claim for conversion or those brought

17   under the FDCPA and the Rosenthal Act because enforcement of the Ally contracts is not directly

18   implicated by those claims. Veronica's interest in the vehicle as community property is sufficient to

19   confer standing for a conversion claim. See Cal. Fam. Code § 751 ("The respective interests of the

20   husband and wife in community property during continuance of the marriage relation are present,

21   existing, and equal interests."); see also Vick v. DaCorsi, 110 Cal. App. 4th 206, 212 (2003). In

22   addition, since the allegations in the Complaint are that Ally made certain representations to both

23   spouses (see Compl., at ¶¶ 5, 19), Veronica may have standing under the FDCPA pursuant to 15

24   U.S.C. § 1692c(d) ("For the purpose of this section, the term 'consumer' includes the consumer's

25   *spouse*, parent [if the consumer is a minor], guardian, executor, or administrator.") and the

26   RFDCPA, which incorporates the same federal provision. Cal. Civ. Code § 1788.17.

27        **B.      First and Fourth Causes of Action: Breach of Contract and Insurance Bad Faith**

28        Ally argues the Complaint fails to state a sufficient claim for breach of contract and

                                                     5

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court

For the Northern District of California

1    insurance bad faith.  The court agrees.

2                    **I.       Breach of Contract**

3          Under California law, a claim for breach of contract requires: "(1) existence of the contract;

4    (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages to

5    plaintiff as a result of the breach."  <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226, 1239

6    (2008).

7          As to the first element, the court finds that the allegations do not sufficiently notify Ally

8    whether the claim is for breach of the RISC, the GAP contract, or both.  Neither are identified by

9    name in the allegations listed for the breach of contract claim.  "Where a party relies upon a contract

10   in writing, and it affirmatively appears that all the terms of the contract are not set forth *in hoec*

11   *verba*, nor stated in their legal effect, but that a portion which may be material has been omitted, the

12   complaint is insufficient."  <u>Gilmore v. Lycoming Fire Ins. Co.</u>, 55 Cal. 123, 124 (1880); <u>see also</u>

13   <u>Otworth v. S. Pac. Transp. Co.</u>, 166 Cal. App. 3d 452, 459 (1985).  Such is the case here.  The

14   Complaint merely states that "[b]oth State Farm and Ally Financial breached their respective

15   agreements with Gutierrez."  <u>See</u> Compl., at ¶ 15.  Surprisingly, the next sentence states that

16   "specific provisions" of unspecified contracts were breached, but these provisions are not detailed

17   adequately in the Complaint in order for Ally, or the court for that matter, to determine which

18   contract or what "specific provisions" of any particular contract are at issue for this claim.  This type

19   of clarity is especially important when there are three separate written contracts potentially raised in

20   this litigation and none are attached to the Complaint.

21         In addition, the Complaint insufficiently alleges facts to support the second and third

22   elements of a prima facie claim for breach of contract.  By way of example and assuming the intent

23   of this claim is to allege breach of the GAP contract as to Ally, Plaintiff has not alleged facts to

24   demonstrate either notification to Ally that State Farm had declared the vehicle a "total loss," or that

25   this performance was excused because State Farm itself made such notification to Ally.[4]  The

26   _____

27        [4] The GAP contract states, in pertinent part:

28             You are responsible for all notifications or claims that are required to
               be filed with your automobile insurance company.  We will not

                                          6

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

express terms of the GAP contract require that this specific information be communicated *before* Ally would waive its rights to the remaining balance due on the vehicle.  In other words, the affirmative finding of "total loss" needed to be made by State Farm and its attendant paperwork needed to be provided to Ally before the theft became a covered event under the GAP contract.  The fact that Joel may have simply reported the theft to Ally - without also obtaining and notifying Ally of a "total loss" declaration by State Farm and providing the documentation - is not enough.  The GAP contract requires something specific.

Accordingly, the breach of contract claim is dismissed with leave to amend since Joel may be able to modify the allegations and provide additional factual information consistent with the discussion contained this section.

### ii.   Insurance Bad Faith

> process or handle your insurance claims for you.

> In the event of a constructive total loss to the covered vehicle, we agree to waive our rights against you for the amount due under a payable loss.

"Constructive total loss" is defined in the GAP as:

> A direct and accidental loss or damage of covered vehicle which meets one of these criteria: 1. The total cost to repair the covered vehicle is greater than the ACV of the covered vehicle immediately prior to the date of loss or 2. *the covered vehicle is stolen and is not recovered within 30 days from the date a police report was filed, and your primary carrier declares the covered vehicle a total loss.*

The GAP contract also requires the following:

> In the event of a constructive total loss, you must notify and provide all of the following to our GAP Adminstrator . . . 1. a complete copy of the primary insurance settlement, including the valuation report; 2. a copy of the original financing contract and this addendum; 3. a copy of the accident/police report; 4. a copy of your automobile insurance policy; 5. a copy of the payoff from the financial institution/lender as of the date of loss; 6. a copy of the insurance settlement check; and 7. any additional reasonable documentation requested by our GAP administrator or us.  *The GAP administrator will not obtain this information for you.*  The GAP administrator must receive this documentation within 90 days of settlement by your primary carrier. *No payment will be made if this documentation is not provided to the GAP administrator within this stated time period.*

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

*(left margin)* United States District Court — For the Northern District of California

Much like the breach of contract claim, the Complaint's allegations are insufficient to plead a claim for insurance bad faith. In California, "[i]n addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing." Richards v. Sequoia Ins. Co., 195 Cal. App. 4th 431, 438 (2011) (citing Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1093, (2005)). The ultimate test of bad faith liability is whether a refusal or alleged delay was unreasonable. Chateau Chamberay Homeowners v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001) (citing Opsal v. United Servs. Auto. Ass'n, 2 Cal. App. 4th 1197, 1205 (1991)).

The essence of this claim is the allegation that Ally unreasonably delayed or refused to waive any further payments owed by Joel when the vehicle was stolen. The facts, however, do not support the allegation that Ally's delay or refusal was unreasonable since, as already suggested above, Ally cannot be said to have acted unreasonably if its duty to perform under the GAP contract did not arise because of Joel's nonperformance.[5] Thus, for much the same reason as the breach of contract claim, the insurance bad faith claim will also be dismissed with leave to amend.[6]

--------

[5] To the extent Joel alleges his performance under the GAP contract was excused through oral statements of Ally representatives, facts sufficient to demonstrate a modification of the GAP contract's terms have not been included. See Cal. Civ. Code § 1698(c) ("Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration.")

Ally argues that an oral modification is precluded due to non-modification language contained in the RISC as well as the statute of frauds. The court, however, cannot make such a determination at this time. Based on the nature of any amendments clarifying the contracts and provisions at issue, it could be found that the RISC and GAP contracts are, in fact, separate contracts.

[6] Moreover, the allegations do not support a claim for breach of the implied covenant of good faith and fair dealing to the extent such a stand-alone claim is alleged in the Complaint. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Careau & Co. v. Sec. Pacific Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393 (1992) (quoting Restatement (Second) of Contracts § 205 (1981)). The implied covenant of good faith is read into contracts in order to protect the express promises made therein, not to promote a general public policy interest with no direct relation to the contract's purpose. Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992). It cannot be used as a way to "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Guz v. Bechtel National, Inc., 24 Cal.4th 317, 350 (2000).

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    **C.      Second and Third Causes of Action: Fair Debt Collection Practices Act ("FDCPA") and Rosenthal Fair Debt Collection Practices Act ("RFDCPA")**

2

3          Plaintiffs have alleged claims for violation of the FDCPA and RFDCPA against Ally.

4    Neither are sufficiently plead.

5          Turning first at the FDCPA, a plaintiff must allege facts that establish the following: (1)

6    plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant

7    qualifies as a "debt collector" under the FDCPA; and (3) the defendant has engaged in a prohibited

8    act or has failed to perform a requirement imposed by the FDCPA.  See, e.g., Frazier v. Absolute

9    Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011); McCorriston v. L.W.T., Inc.,

10   536 F. Supp. 2d 1268, 1278 (M.D. Fla. 2008); Fenn v. CIR, Law Offices, No.

11   1:10-CV-01903-OWW-SMS, 2011 WL 850131, 2011 U.S. Dist. LEXIS 23141, at *5 (E.D. Cal.

12   Mar. 8, 2011).

13         Similar to the breach of contract claim, Plaintiffs' failure to plead specific contract

14   provisions or attach copies of the relevant contracts to the Complaint is fatal to the FDCPA claim in

15   its current state.  A debt subject to the FDCPA is "any obligation or alleged obligation of a consumer

16   to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household

17   purposes."  15 U.S.C. § 1692a(5).  Here, there is not a description of the debt owed, where it was

18   allegedly incurred, or why it qualifies as a personal, family or household debt as required by §

19   1692a(5).  Moreover, there are no allegations which reasonably explain the absence of that

20   information from the complaint.  Plaintiffs did not need the actual loan contract in order to provide

21   the minimal facts required by the FDCPA or the RFDCPA, which contains a similar definition of

22

23

24

25         Here, Joel alleges that Ally "failed to act reasonably by pursuing its unpaid payments from

26   State Farm as opposed to selling the vehicle and depriving [Joel] of the equity in the vehicle."  This
     allegation seeks to impose a duty on Ally that does not appear in either the RISC or GAP contract.

27   In fact, the GAP contract contains language indicating it would not affirmatively pursue payment
     from Joel's insurance carrier.  As such, it cannot support a claim for breach of the implied covenant

28   of good faith and fair dealing as plead.

9

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court

For the Northern District of California

1    "consumer debt."[7]

2        In addition, the allegations do not establish that Ally is a "debt collector."  A "debt collector"

3    under the FDCPA is either (1) "a person" the "principal purpose" of whose business is the collection

4    of debts; or (2) "a person" who "regularly" collects debts on behalf of others.  15 U.S.C. § 1692a(6).

5        Plaintiffs allege that Ally Financial Company, the named defendant in this case, held a lien

6    on the vehicle and was an additional insured on their insurance policy with State Farm.  They further

7    allege that since "Ally Financial is a subsidiary of Ally Bank that is a fictitious name used to collect

8    debts for the bank," that Ally Financial qualifies as a "debt collector" under § 1692a(6).  As plead,

9    however, Plaintiffs' ultimate conclusion does not comport with the definition contained in the

10    statute.  Ally Financial cannot be both the lienholder and a "debt collector" because the FDCPA

11    defines the latter as a person who collects debts *on behalf of others*.  "[A]s a matter of law a 'debt

12    collector' under the FDCPA cannot be a consumer's creditor."  <u>Rispoli v. Bank of America</u>, 2011

13    WL 3204725, 2011 U.S. Dist. LEXIS 85053, at *7 (W.D. Wash. July 1, 2011).

14        Since Plaintiffs have not stated a claim under the FDCPA or the RFDCPA, the second and

15    third causes of action will be dismissed with leave to amend to allow Plaintiffs the opportunity to

16    clarify their allegations.

17                            **IV.   ORDER**

18        Based on the foregoing, Ally's Motion to Dismiss is GRANTED as follows:

19        1.       Veronica is DISMISSED WITH PREJUDICE from the claims for breach of contract,

20    breach of the implied covenant of good faith and fair dealing, or bad faith against to the extent those

21    claims are asserted against Ally; and

22        2.       The claims for breach of contract (Claim 1), violation of the FDCPA (Claim 2),

23

24    _____

25        [7] Under the RFDCPA, a "consumer debt" is "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer transaction."

26    Cal. Civ. Code § 1788.2(f).  A "consumer credit transaction" is one between a natural person and another person in which property, services or money is acquired on credit by that natural person

27    from such other person "for personal, family, or household purposes."  Cal. Civ. Code § 1788.2(e). Thus, the RFDCPA, like the FDCPA, requires the debt subject to collections must be one relating to personal, family, or household purposes.  <u>Compare</u> Cal. Civ. Code § 1788.2 <u>with</u> 15 U.S.C §

28    1692a(5).

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   violation of the RFDCPA (Claim 3) and insurance bad faith (Claim 4) are each DISMISSED WITH

2   LEAVE TO AMEND.

3          Any amended complaint shall be filed no later than 30 days from the date this order is filed.

4   **IT IS SO ORDERED.**

5

6   Dated:  February 7, 2012

7                                                    EDWARD J. DAVILA
                                                     United States District Judge

Case No. 5:11-cv-03111 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS